***********
The Full Commission, based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr., and the briefs and oral arguments on appeal, reviewed this matter. The Full Commission affirms the prior Opinion and Award, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 27 August 2001 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff-employee and the defendant-employer at the times in question.
3. The carrier liable on the risk is correctly named.
4. The plaintiff's average weekly wage is $398.72 as calculated from the Industrial Commission Form 22 wage chart.
5. The defendants deny that the plaintiff sustained a compensable injury, or contracted a compensable occupational disease on or about 12 October 2000.
6. Various medical records and other documents have been stipulated into evidence with the Pre-Hearing Agreement. After the hearing, the parties stipulated into evidence a letter from Dr. John dePerczel dated 27 September 2001.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACTS
1. The plaintiff worked for the defendant-employer as a cut-off saw operator. That job involves cutting off long boards to shorter lengths, so that the boards can be used in the manufacturing of furniture.
2. Approximately 20 years prior to 12 October 2000, the plaintiff had undergone a back surgery for a non-work injury. The plaintiff fully recovered and returned to work without experiencing any problems with his back until the spring of 1999. At that time, the plaintiff was examined on two occasions at the Catawba Memorial Hospital by Dr. James Broselow, and underwent an MRI that did not reveal any serious back problem. There is no evidence or indication that the plaintiff had any treatment for his back between the time of the 14 April 1999 MRI and 12 October 2000.
3. On the afternoon of 12 October 2000, the plaintiff alleges that he was moving a board 12 to 14 feet long, 20 to 25 inches wide, and 2 inches thick that weighed between 100 and 150 pounds. The plaintiff further alleges that the coworker that normally assisted him, Mr. Robert Neal, was out of work having knee surgery on this day. The plaintiff testified that when he lifted the end of the board onto the cut-off saw he experienced a stinging sensation in his back. The plaintiff testified that at that time he believed that he had pulled a muscle in his back.
4. Mr. Kevin Lockhart, a co-employee of the plaintiff, testified at the hearing before the Deputy Commissioner that he recalled the plaintiff telling him during the afternoon of 12 October 2000 that the plaintiff had hurt his back. The plaintiff's sister, Ms. Shirley Hutton, who regularly speaks with her brother nearly every day, testified that the plaintiff informed her on the evening of 12 October 2002 that he had injured his back that day at work while lifting. On the day following the incident plaintiff called his neighbor, Mr. Frank Williams, to help the plaintiff get dressed. The plaintiff also testified that he informed Williams about getting hurt at work the previous day.
5. The plaintiff also testified that he recalls telephoning Mr. George Walker, the plaintiff's supervisor (the defendant-employer's assistant plant manager) on the morning of 13 October 2000 to inform him that the plaintiff had injured his back, and would not be able to work. Mr. Walker does not recall the specific telephone call at issue, but does recall being informed at some time by the plaintiff that he had hurt his back and was unable to work.
6. For his back condition, the plaintiff was initially treated by Dr. James Broselow. Thereafter, Dr. Broselow referred him to Dr. John dePerczel, an orthopedist, who initially examined the plaintiff on 26 October 2000. At that time, the plaintiff reported a history of worsening back pain over the prior two weeks, and that he had been unable to work. The plaintiff did not tell the doctor that he had suffered an injury at work. Eventually, on 8 November 2000, the plaintiff underwent surgery by Dr. dePerczel at the L3-4, L4-5, and L5-S1 levels.
7. Since the filing of his claim, the plaintiff's testimony and the plaintiff's medical records have not always coincided. The records of Dr. Broselow from 16 October 2000 do not indicate that the plaintiff reported any injury at work. The records do reflect that the plaintiff reported experiencing back pain for three days, with the pain being worse when the plaintiff was lying down, or with movement. Another note from that date from Dr. Broselow chronicles the medical history of the plaintiff's back, highlighting the 1999 MRI which revealed "[m]ild spinal stenosis secondary to protrusion of L3-L4," and that the plaintiff had undergone surgery years earlier. In addition to Dr. Broselow's records, notes from the defendant-employer's medical facility dated 28 November 2000 indicate that the plaintiff had notified his employer regarding his back surgery on 8 November 2000, and plaintiff's belief that his condition was work-related. At the time of this note, the plaintiff had been out of work for several weeks. Regarding the cause of his back problem, evidence was presented that the plaintiff informed the defendant-employer's personnel that he had awakened one morning and felt pain in his back. Evidence was also presented that the plaintiff referenced lifting at work when discussing a cause of his problem, but that the plaintiff did not refer to any specific incident.
8. The records from Dr. dePerczel do not indicate that the plaintiff informed him of a possible work-related cause of his back condition. On the issue of causation of plaintiff's current back condition, Dr. dePerczel was unable to render an opinion.
9. The lay and medical evidence of record does not support a finding that the plaintiff sustained an injury by accident or an injury by accident in the form of a specific traumatic incident of the work assigned on or about 12 October 2000.
 ***********
Based upon the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident arising out of and in the course of his employment with the defendant-employer on 12 October 2000. G.S. § 97-2(6).
2. The plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. Id.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and is HEREBY DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER